1  COVAD COMMUNICATIONS COMPANY
   BRAD SONNENBERG (SBN 151158)
2  MARGARET A. ROBBINS (SBN 193746)
   LISA R. CROWLEY (SBN 175946)
3  3420 Central Expressway
   Santa Clara, California  95054
4  Telephone:  (408) 844-7500
   Facsimile:  (408) 616-6604
5
   ROSS, DIXON & BELL, LLP
6  John R. Gerstein (admitted *pro hac vice*)
   Merril Hirsh (admitted *pro hac vice*)
7  Gabriela Richeimer (admitted *pro hac vice*)
   2001 K Street, N.W.
8  Washington, D.C. 20006-1040
   Telephone:  (202) 662-2000
9  Facsimile:  (202) 662-2190

10 ROSS, DIXON & BELL, LLP
   James W. Stubblefield (SBN 164284)
11 550 West B Street, Suite 400
   San Diego, CA 92101-3538
12 Telephone:  (619) 235-4040
   Facsimile:  (619) 231-8796
13
14 Attorneys for Defendants
   COVAD COMMUNICATIONS COMPANY and
15 DIECA COMMUNICATIONS, INC.

16             UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
17                SAN JOSE DIVISION

18

19 Verizon Delaware Inc., Verizon New England        Case No. C 01-20524 (JF)
   Inc., Verizon New Jersey Inc., Verizon New
20 York Inc., Verizon Pennsylvania Inc., and         DEFENDANTS' NOTICE OF
   Verizon Washington D.C. Inc.,                     RENEWED MOTION AND
21                                                   RENEWED SPECIAL MOTION TO
                 Plaintiffs,                         STRIKE PURSUANT TO
22                                                   CALIFORNIA CODE OF CIVIL
       v.                                            PROCEDURE § 425.16;
23                                                   MEMORANDUM OF POINTS AND
   Covad Communications Company and DIECA            AUTHORITIES
24 Communications, Inc.,
                                                     ─────────────────────────
25               Defendants.                         Date:  March 18, 2002
                                                     Time:  9:00 a.m.
26                                                   Place: Room 3, 5th Floor
                                                            Hon. Jeremy Fogel
27

28         TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE that on March 18, 2002, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 280 South First Street, San Jose, California 95113, defendants Covad Communications Company and DIECA Communications Inc. ("Covad"), shall hereby and do move the Court for an order striking all counts of the Complaint in this action pursuant to California Code of Civil Procedure § 425.16 on the ground that they arise from Covad's statements made in furtherance of its rights to free speech and petition under the United States and California Constitutions.

This motion is made pursuant to California Code of Civil Procedure § 425.16 and is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Wayne White, Megan Doberneck, and Catherine Boone attached hereto, the Memorandum of Points and Authorities and Reply in Support of Covad's Original Motion to Strike, filed in this action on September 4, 2001 and November 5, 2001, respectively, the Declarations of Susan Jin Davis and Jason Oxman filed with Covad's Original Motion to Strike, Covad's Motion to Dismiss the Original and Amended Complaints, respectively, all of the records and files in this action, and such additional matters and oral argument as the Court may consider.

# MEMORANDUM OF POINTS OF AUTHORITIES

## Table of Contents

INTRODUCTION AND ISSUE TO BE DECIDED ........................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

      A.    Covad's Exercise of Its Constitutional Rights and Verizon's Response. ............... 2

      B.    Verizon's Public Relations Campaign is Designed To
             Chill Covad's Constitutional Rights. ..................................................... 3

      C.    Verizon Has Depleted Covad's Resources and Impaired Its
             Ability To Exercise Its Rights. ............................................................ 4

      D.    Verizon's Amended Complaint is Riddled with Contradictions ........................ 4

I.    VERIZON'S AMENDED COMPLAINT CONFIRMS THAT THIS
      IS A SLAPP SUIT ........................................................................................ 6

      A.    This Lawsuit Arises From Covad's Protected First Amendment Activity. ............ 7

      B.    Verizon's Amendments Confirm That It Had No Legitimate Basis For
             Challenging Covad's Speech and Petition Activities. ................................... 8

II.   VERIZON CANNOT SATISFY THE STATUTE'S REQUIREMENT THAT IT
      PROVIDE ADMISSIBLE EVIDENCE SHOWING A PROBABILITY OF
      PREVAILING ........................................................................................... 11

III.  THE ANTI-SLAPP STATUTE ENTITLES COVAD TO ITS
      ATTORNEYS FEES AND COSTS ................................................................. 15

CONCLUSION .................................................................................................. 16

1

## Table of Authorities

2

### FEDERAL CASES

3

Continental Casualty Co. v. Richmond,
  763 F.2d 1076 (9th Cir. 1985) .............................................................7-8

4

Ecash Technologies, Inc. v. Guagliardo,
  127 F. Supp. 2d 1069 (C.D. Cal. 2000)..........................................6, 9, 10

5

6

Global Telemedia Int'l, Inc. v. Doe 1,
  132 F. Supp. 2d 1261 (C.D. Cal. 2001)....................................................7

7

Jones Intercable of San Diego, Inc. v. City of Chula Vista,
  80 F.3d 320 (9th Cir. 1996) .....................................................................8

8

9

United States ex rel. Newsham v. Lockheed Missiles & Space Co.,
  190 F.3d 963 (9th Cir. 1999).....................................................................6

10

### STATE CASES

11

12

Acceptance Ins. Co. v. Syufy Enterprises, Inc.,
  69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557 (1999) .........................8

13

Beilenson v. Superior Court (Sybert),
  44 Cal. App. 4th 944, 52 Cal. Rptr. 2d 357 (1996)................................11

14

Briggs v. Eden Council for Hope & Opportunity,
  19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999) ........................................7

15

16

Church of Scientology v. Wollersheim,
  42 Cal. App. 4th 628, 49 Cal. Rptr. 2d 620 (1996)..................................9

17

Coltrain v. Shewalter,
  66 Cal. App. 4th 94, 77 Cal. Rptr. 2d 600 (1998)....................................9

18

19

Dowling v. Zimmerman,
  85 Cal. App. 4th 1400, 103 Cal. Rptr. 2d 174 (2001).......................7, 11

20

DuPont Merck Pharm. Co. v. Superior Court,
  78 Cal. App. 4th 562, 92 Cal. Rptr. 2d 755 (2000)............................6, 11

21

22

Evans v. Unkow,
  38 Cal. App. 4th 1490, 45 Cal. Rptr. 2d 624 (1995)..............................11

23

Fox Searchlight Pictures, Inc. v. Paladino,
  89 Cal. App. 4th 294, 106 Cal. Rptr. 2d 906 (2001)................................7

24

25

Kyle v. Carmon,
  71 Cal. App. 4th 901, 84 Cal. Rptr. 2d 303 (1999)..................................9

26

Lazar v. Superior Court,
  12 Cal. 4th 631, 49 Cal. Rptr. 2d 377 (1996)........................................11

27

28

Lui v. Moore,
    69 Cal. App. 4th 745, 81 Cal. Rptr. 2d 807 (1999)........................................8, 9, 10

San Diego v. Southern Cal. Tel. Corp.,
    42 Cal.2d 110, 226 P.2d 14 (1954) .........................................................................8

Simmons v. Allstate Insurance Co.,
    92 Cal. App. 4th 1068, 112 Cal. Rptr. 2d 397 (2001)............................................10

Wilcox v. Superior Court,
    27 Cal. App. 4th 809, 33 Cal. Rptr. 2d 446 (1994)......................................6, 9, 11

**STATE STATUTES**

Cal. Code. Civ. P. § 425.16...................................................................................*passim*

1

**Introduction and Issue To Be Decided**

2    On November 28, 2001, the Court dismissed the Original Complaint with leave to amend,

3  and deferred consideration of Covad's Special Motion to Strike Pursuant to California Code of

4  Civil Procedure § 425.16 (the "anti-SLAPP statute").  The Court found that "[w]hile the

5  complaint appears to be based in part upon communications between Covad and Verizon, the

6  complaint also appears to be based in part upon communications between Covad and regulatory

7  bodies and/or the public."  Order at 5.  In amending, Verizon could have attempted to explain the

8  allegations that attacked Covad's First Amendment activities.  Instead, Verizon reversed course,

9  eliminating many of the offending allegations in an attempt to disguise its SLAPP suit

10  retroactively.

11    The contrast between the Original and Amended Complaints is stark, but each reveals that

12  Verizon filed this lawsuit not to vindicate any valid claim, but to silence a critic.[1]  While

13  allegations concerning Covad's free speech and petition activity run rampant through the Original

14  Complaint, the Amended Complaint is more notable for the allegations that Verizon has

15  expunged.  With its Original Complaint, Verizon launched an attack on Covad's freedom of

16  speech before the public, the media, regulators, and legislators (see e.g., ¶¶ 2, 3), but Verizon

17  largely sanitized the Amended Complaint of these attacks.  The Original Complaint also

18  repeatedly challenged Covad's advocacy before Congress, the FCC, state PUCs, and the Telecom

19  Task Force, an agency created by the United States Department of Justice (see e.g., ¶¶ 30-33, 38,

20  46, 58).  In fact, Verizon devoted an entire section of the Original Complaint to Covad's recourse

21  before regulators and legislators.  Orig. Compl. at 13-14.  In the Amended Complaint, Verizon

22  erased all explicit references to Covad's petition activities, leaving only oblique references to

23  Covad's ability to obtain "PAP concessions."  Amended Compl. ¶¶ 94-96.

24    Moreover, in defending the Original Complaint, Verizon urged the Court to find that its

25  allegations concerning Covad's constitutionally protected activity were appropriate to the case at

26

27    [1] With this memorandum of points and authorities, Covad renews its Special Motion to
Strike the Original Complaint (the "Original anti-SLAPP Motion").  Accordingly, the Original

28  Complaint, the Original anti-SLAPP Motion, and all related papers are before the Court and are
incorporated herein by reference.

COVAD'S RENEWED SPECIAL MOTION TO STRIKE (No. C 01-20524)

hand and relevant to its resolution.[2]  Yet, Verizon now abandons those allegations.  The question the Court must decide is:

> **Can Verizon side-step the "Anti-SLAPP" statute simply by erasing all explicit references to Covad's protected activity in the Amended Complaint, when the Original Complaint, on its face, implicated Covad's First Amendment rights?**

None of Verizon's amendments, no matter how dramatic, can insulate this lawsuit from the anti-SLAPP statute.  Verizon decried Covad's speech and petition activity in its Original Complaint.  It cannot now unring that bell.  Nor can it now conceal the vexatious nature of this lawsuit.  In fact, by stripping the Amended Complaint of many of its allegations concerning Covad's First Amendment activities, Verizon concedes that these allegations supported no valid claim.  Such gratuitous attacks on a party's First Amendment rights are the hallmark of a SLAPP suit.  The Court should strike this action.

### Statement of Facts[3]

**A.      Covad's Exercise of Its Constitutional Rights and Verizon's Response.**

As the Court noted in its Order of November 28, 2001, Covad is both a customer and a competitor of Verizon's various companies.  Order at 2.  As a result of this "contentious" relationship, id. at 2, Covad has petitioned state and federal legislative bodies and the courts in an attempt to enforce Verizon's compliance with the antitrust laws, the Telecommunications Act of 1996 and other governing regulations.  See Covad Original anti-SLAPP Motion at 2-9.  Covad has also exercised its freedom of speech on issues of public concern, such as the ability of competitive local exchange carriers, or "CLECs," such as itself to enter the market for internet

---

[2] See, e.g., Verizon's Opp. to Covad's Special Mot. to Strike, dated October 22, 2001, at 17 n.8 (arguing that statements Covad made to its *own investors* are actually among the evidence supporting Verizon's fraud claim); id. at 19 n. 19 (arguing that allegations of "false statements made to regulators" provide "evidence of intent"); Verizon's Opp. to Covad's Mot. to Dismiss, dated October 22, 2001, at 21 (arguing that "array of business practices by Covad" upon which Verizon bases its UCL claim include those in paragraphs 30 and 32, which allege that "[l]ike a proverbial squeaky wheel, defendants sought to increase pressure of Verizon" by issuing "press releases," Orig. Compl. ¶ 30, and making "public charges," id. ¶ 32).

[3] In its Original anti-SLAPP Motion, Covad provided the Court with a detailed description of the relationship between the parties and the facts of the case.  See Original anti-SLAPP motion at 2-12.  In the interest of judicial economy, Covad will not reiterate those facts here, but will instead provide a brief summary and describe the events that have occurred subsequent to the anti-SLAPP motion.

1   access services and compete on a level playing field with Verizon.  Id.

2           In turn, Verizon has attacked Covad.  Barely two weeks after Covad filed an antitrust

3   lawsuit against Verizon, Verizon singled out Covad for a lawsuit concerning a patent which,

4   according to Verizon, covered a significant percentage of all internet access services across the

5   country, not just those services provided by Covad.  Verizon's patent suit was dismissed

6   summarily, and the dismissal was upheld on appeal.  Id. at 6-7.   Then Verizon filed this action,

7   launching a direct attack in retaliation for Covad's First Amendment activity.  See, e.g., Covad's

8   Reply in Support of [Its] Special Motion to Strike, dated November 5, 2001 ("Covad anti-SLAPP

9   Reply"), at 1-3.

10          **B.      Verizon's Public Relations Campaign is Designed To**
                      **Chill Covad's Constitutional Rights.**

11

12          In the Original Complaint, Verizon declared that Covad was not only committing a fraud

13   against it, but was also committing securities fraud against its investors, defrauding its customers,

14   lying to regulators and lying to Congress. See Orig. Comp. ¶¶ 2, 3, 30-33, 38, 46, 58.  Then

15   Verizon publicized the Complaint, including submitting it to regulators, in an effort to discredit

16   and stifle a critic.  See Covad Original Anti-SLAPP Br. at 10-12; Covad Anti-SLAPP Reply 2-3;

17   See also Declarations of Megan Doberneck and of Catherine Boone, attached hereto.  It also

18   launched a broad public relations campaign designed to punish Covad.  Among other things,

19   Verizon notified the Wall Street Journal of its intent to file this action, and held a press

20   conference thereafter. It used the allegations of the Original Complaint in a flyer that it distributed

21   to hundreds of regulators at a public forum.  Verizon also posted the Original Complaint and 26

22   anonymous declarations on its website.  To date, the Original Complaint, with many

23   inflammatory allegations that Verizon has now abandoned in this litigation, remains on Verizon's

24   website, but neither the Amended Complaint, nor any reference to it, appear there.[4]

25

26

27
            [4] Verizon's Original Complaint is found on its website as a link to its press release titled,
28   "**Verizon Lawsuit Charges Covad Falsified Thousands of Trouble Reports Costing Verizon**
     **Millions of Dollars.**"  See http://newscenter.verizon.com/proactive/newsroom/release.vtml?id=56108.

C.     **Verizon Has Depleted Covad's Resources and Impaired Its Ability To Exercise Its Rights.**

Verizon has already achieved certain of its objectives with this lawsuit.  Covad has two Washington lawyers dedicated to federal and legislative advocacy.  See Original anti-SLAPP Motion at 11-12; Oxman Decl. ¶ 19 (logged therewith).  The vague, inflammatory accusations Verizon has made against Covad have demanded considerable response time from these advocates.  Id.

The Amended Complaint only upped the ante.  While Verizon dropped many of its accusations in this litigation, it continues to use the allegations of the Original Complaint as the cornerstone of its publicity campaign against Covad, by, among other things, posting the Original Complaint, but not the Amended Complaint, on its website.  In so doing, Verizon has created a moving target for Covad's defense, thereby implicating even more of Covad's resources and further impacting Covad's ability to exercise its First Amendment rights.

D.     **Verizon's Amended Complaint is Riddled with Contradictions.**

In response to Covad's Original anti-SLAPP Motion, Verizon claimed that its allegations concerning Covad's protected activity were necessary and appropriate to this lawsuit.  See n.2, *supra*.  Now Verizon has abandoned any attempt to justify its original allegations and, in doing so, implicitly contradicts its earlier position on these allegations.  See id.

But Verizon's Amended Complaint contains other important contradictions.  First, Covad and Verizon have been involved in regulatory proceedings regarding Verizon's applications to enter the long distance market.  See Orig. Compl. ¶ 31.  Among the issues at these proceedings were whether Verizon was providing CLECs, including Covad, with sufficient access to its telephone network and, if Verizon failed to do so, what penalties should follow.  As the Department of Justice noted in one such proceeding in September 2000, certain performance data "indicate[d] significant discrimination in the time Verizon takes to install DSL loops, the quality of those loops at the time of installation, and the manner in which Verizon repairs the loops." Oxman Decl., Ex. A, p. 10 (footnotes omitted), (attached to Covad's Orig. anti-SLAPP Motion).

In response, and also in September 2000, Verizon claimed that the performance data

submitted by CLECs, including Covad, was inaccurate.  Id.  The Department of Justice summarized Verizon's claims as follows:

> First, Verizon claims that some of the CLECs accept loops that they know, or should know, are not working and then submit trouble tickets to have Verizon repair them.  In addition, Verizon claims that its missed repair appointment measure is overstated because the CLECs frequently submit trouble tickets without first properly isolating the problem to the Verizon network.  According to Verizon, this practice is indicated by the relatively high number of 'no trouble found' reports Verizon receives from its technicians.  The unnecessary dispatches resulting from this practice allegedly tie up Verizon technicians and keep them from responding to real problems in the network.

Id. at 12-13 (citations to Verizon's filings omitted).

Now, in this lawsuit, Verizon claims that it was fooled by and relied upon Covad's alleged submission of fraudulent trouble tickets through 2001.  Indeed, according to the Amended Complaint, Verizon relied upon "thousands of false trouble tickets [that Covad submitted] to Verizon beginning in approximately March 2000 *through 2001*."  Am. Comp. ¶ 71 (emphasis added).  In making this claim, Verizon must revise history and disclaim its representations to regulators.

Second, Verizon's Original Complaint alleged that Covad submitted "more than 22,000 false trouble tickets in the year 2000 alone," ¶ 2, yet failed to identify a single trouble ticket.  Verizon attempted to justify this shortcoming by claiming a current inability to identify specific trouble tickets and claiming that Covad had the information.  See Verizon's Opp. to Covad's Mot. to Dismiss at 9.

Now, to its Amended Complaint, Verizon attaches five exhibits (A through E) purporting to identify over 23,000 trouble tickets that Covad issued but that Verizon returned as "no trouble found," "no access" or "facilities change."  According to Verizon, "[e]ach of the trouble tickets listed in the exhibits is a specific instance where Covad falsely represented there was a problem on a line caused by Verizon."  Am. Compl. ¶ 1.

Finally, not only is Verizon's sudden ability to identify trouble tickets suspicious, it is also specious.  Exhibits A-E actually contradict Verizon's claims.  For example, in some activity logs, Verizon technicians noted an inability to test the circuit and, therefore, closed the trouble ticket as

1   "no trouble found."  See Declaration of Wayne White, attached hereto, ¶ 12.  But the fact that

2   these technicians could not test the circuit does not imply that any trouble ticket was false.  In

3   other activity logs, Verizon technicians noted repair work that they performed or noted the

4   provision of an alternate loop.  See id. ¶ 14.   In still other activity logs, Verizon technicians noted

5   a need to visit the end user's premises or attempt to find an alternative loop.  See White Decl.

6   ¶¶ 12-14.  None of these activity logs suggest that Covad's trouble tickets were false, let alone

7   fraudulent.  To the contrary, they suggest that Covad's trouble tickets were proper.[5]

8         Nonetheless, Verizon has returned this complaint, and apparently urges that its

9   amendments insulate it from the anti-SLAPP statute.

10                              **Argument**

11   **I.    VERIZON'S AMENDED COMPLAINT CONFIRMS THAT THIS**
12   **      IS A SLAPP SUIT.**

13         California's anti-SLAPP statute, Cal. Code. Civ. P. § 425.16(b)(1) provides:

14         A cause of action against a person arising from any act of that person in
          furtherance of the person's right of petition or free speech under the United
15         States or California Constitution in connection with a public issue shall be
          subject to a special motion to strike, unless the court determines that the
16         plaintiff has established that there is a probability that the plaintiff will
          prevail on the claim.
17

18   As Covad explained in its original motion, the anti-SLAPP statute provides for the early dismissal

19   of meritless suits aimed at chilling the valid exercise of free speech and petition for the redress of

20   grievances.  The portions of the statute providing for special motions to strike and attorneys' fees

21   apply to state law claims filed in federal court, United States ex rel. Newsham v. Lockheed

22   Missiles & Space Co., 190 F.3d 963, 972-73 (9th Cir. 1999); ecash Technologies, Inc. v.

23   Guagliardo, 127 F. Supp. 2d 1069, 1074-75 (C.D. Cal. 2000), and must be construed broadly.

24   Global Telemedia Int'l, Inc. v. Doe 1, 132 F. Supp. 2d 1261, 1265 n.3 (C.D. Cal. 2001); Dowling

25   v. Zimmerman, 85 Cal. App. 4th 1400, 1414, 103 Cal. Rptr. 2d 174 (2001) (citing Briggs v. Eden

26

27         [5] Relatedly, Exhibits A-E fail to inform Covad or the Court who made the alleged
       misstatements, to whom they were made, what the alleged misstatements were, or why each
28     representation was false.  See generally § II infra & White Decl.

1  Council for Hope & Opportunity, 19 Cal. 4th 1106, 1121, 81 Cal. Rptr. 2d 471, 480 (1999)).  As

2  Verizon has now conceded its only federal cause of action (the Lanham Act claim), this motion

3  now applies to all of its Complaint.

4      Section 425.16 requires early dismissal of this action if:

5      (1)  Covad makes a *prima facie* showing that this action arises from an act in furtherance

6          of its rights of petition and free speech; and

7      (2)  Verizon fails to demonstrate a probability of success on the merits.

8  See e.g., DuPont Merck Pharm. Co. v. Superior Court, 78 Cal. App. 4th 562, 568, 92 Cal. Rptr.

9  2d 755, 760 (2000). The burden upon Covad in making a *prima facie* showing is not a heavy one.

10  The trial court may shift the burden to the plaintiff to establish a probability of success once the

11  defendant shows that the challenged activity is "arguably" constitutionally protected.  Wilcox v.

12  Superior Ct., 27 Cal. App. 4th 809, 822, 33 Cal. Rptr. 2d 446, 454 (1994).

13      Because this action arises from Covad's free speech and petition activity, and because

14  Verizon has not and cannot demonstrate a probability of success on the merits, each of Verizon's

15  claims must be struck pursuant to the anti-SLAPP statute, and Covad is entitled to recover its

16  attorneys fees and costs.

17      **A.**    **This Lawsuit Arises From Covad's Protected First Amendment Activity.**

18      The Court does not have to make any further finding to hold that this litigation arises from

19  Covad's protected activity.  In its prior ruling, the Court found that "[w]hile the complaint

20  appears to be based in part upon communications between Covad and Verizon, the complaint also

21  appears to be based in part upon communications between Covad and regulatory bodies and/or

22  the public."  Order at 5.  The anti-SLAPP statute does not require that a suit be based *solely* on

23  protected activity.  It only requires that the suit *arise from* protected activity.  The term "arising

24  from" is not narrowly defined.  As the Ninth Circuit has noted in another context, "California

25  courts consistently have adopted broad definitions of "arising from" and "arising out of,"

26  equating such terms with "origination, growth, or flow from the event."  Continental Cas. Co. v.

27  Richmond, 763 F.2d 1076, 1080 (9th Cir. 1985) (quoting Pacific Indemnity Co. v. Truck  Ins.

28  Exchange, 270 Cal. App. 2d 700, 704, 76 Cal. Rptr. 281, 283-84 (1969)).  Accord Acceptance

1   Ins. Co. v. Syufy Enterprises, Inc., 69 Cal. App. 4th 321, 328, 81 Cal. Rptr. 2d 557, 561 (1999).

2   A complaint that is "based in part" upon, or filed because of, protected activity, Order at 5, is one

3   that arises from that activity.  See, e.g., Jones Intercable of San Diego, Inc. v. City of Chula Vista,

4   80 F.3d 320, 324 (9th Cir. 1996) (challenge to the power to regulate "aris[es] from" regulation);

5   San Diego v. Southern Cal. Tel. Corp., 42 Cal.2d 110, 123-24, 226 P.2d 14, 23-24 (1954) (gross

6   receipts "aris[e] from" all of a company's operation).

7        In Fox Searchlight Pictures, Inc. v. Paladino, 89 Cal. App. 4th 294, 106 Cal. Rptr. 2d 906

8   (2001), the court confronted similar facts.  Fox combined allegations concerning defendant

9   Paladino's recourse to the courts with allegations concerning the disclosure of confidential

10  information.  The court dismissed pursuant to the anti-SLAPP statute, finding that "a plaintiff

11  cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining

12  allegations of protected and nonprotected activity under the label of one 'cause of action.'"  89

13  Cal. App. 4th at 308, 106 Cal. Rptr. 2d at 918.  As a consequence, since the Court already found

14  that Verizon's original complaint was based in part upon Covad's First Amendment activities, the

15  Court may conclude that this action arises from those activities.

16        Moreover, Covad is entitled to have its Original anti-SLAPP Motion decided on the

17  merits.  Liu v. Moore, 69 Cal. App. 4th 745, 748, 81 Cal. Rptr. 807 (1999) ("the court's decision

18  not to hear the merits of appellant's motion to strike deprives appellant of the monetary relief

19  which the Legislature intended to give her, while at the same time it relieves respondents of the

20  punishment which section 425.16 imposes on persons who use the courts to chill others' exercise

21  of their constitutional rights.").  Thus, if the Court does choose to make further findings before

22  ruling on Covad's prima facie showing, the Court should consider not only the Amended

23  Complaint, but also the Original, and may revisit the arguments posed by both sides in the

24  Original anti-SLAPP Motion.

25        **B.     Verizon's Amendments Confirm That It Had No Legitimate Basis For
             Challenging Covad's Speech and Petition Activities.**

26

27        The Court instructed Verizon to explain the basis for its claims.  Rather than attempt an

28  explanation, however, Verizon reversed course, striking many of the offending allegations in a

bid to insulate the Complaint from a SLAPP dismissal.[6]  In doing so, Verizon implicitly concedes that it had no legitimate grounds for complaining of Covad's protected activity.[7]

Abandoning allegations does not make a complaint more palatable for anti-SLAPP purposes.  California law is clear:  the voluntary dismissal of offending claims or allegations does *not* absolve a plaintiff from the repercussions of the anti-SLAPP statute.  To the contrary, anti-SLAPP motions must be considered even if the plaintiff eliminates the allegations giving rise to the motion. ecash Technologies, Inc., 127 F. Supp. 2d 1069; Kyle v. Carmon, 71 Cal. App. 4th 901, 918-19, 84 Cal. Rptr. 2d 303 (1999); Moore v. Lui, 69 Cal. App. 4th 745, 751, 81 Cal. Rptr. 2d 807 (1999); Coltrain v. Shewalter, 66 Cal. App. 4th 94, 107-08, 77 Cal. Rptr. 2d 600, 608-09 (1998).  Accordingly, this Court must reach the merits of Covad's Original anti-SLAPP Motion.  If the Court finds that Covad showed, *prima facie*, that the claims arose from acts in furtherance of protected activity and that Verizon failed to establish a probability of success on the merits, the Court must consider Covad a "prevailing party" under that statute.  ecash Technologies, Inc, 127 F. Supp. 2d at 1084; Kyle, 71 Cal. App. 4th at 918-19, 84 Cal. Rptr. 2d 303; Moore, 69 Cal. App. 4th at 751, 81 Cal. Rptr. 2d 807; Coltrain, 66 Cal. App. 4th at 107-08, 77 Cal Rptr. 2d 608-09.

The reason for this rule is simple.  It would defeat the purposes of the anti-SLAPP statute to allow Verizon first to file a lawsuit that attacks Covad's protected activity, then to use the

---

[6] Verizon does not eliminate all accusations concerning Covad's petition activity, but it casts those remaining in shadows.  Gone are any overt references to Covad's petition activity.  Instead, Verizon makes oblique allegations regarding Performance Assurance Plans ("PAPs"), claiming that Covad's "scheme" enabled it to garner inflated PAP concessions from Verizon.  Verizon is careful to speak of PAPs as if they do not implicate official proceedings.  See Amended Compl. ¶¶ 94-97.  But the PAP allegations in the Original Complaint were more forthcoming.  There, Verizon complained that Covad communicated "at least 200 times with regulatory authorities" to obtain additional PAP payments.  Orig. Compl. ¶ 31.  Thus, allegations concerning Covad's efforts to obtain inflated PAP payments implicate Covad's petition rights.

[7] This concession is one of many that Verizon has made in filing its amended complaint.  For example, gone is the claim that Covad committed any wrongful activity before 1999, any contention that any action involved fraud before March 2000, and the representation that Covad "submitted *thousands* of fraudulent trouble tickets *every* year for *several* years."  VZ First Dism. Opp. at 9 (citing Original Compl. ¶¶ 1, 25) (emphasis added).  Similarly gone is the attempt to persuade investors that Covad was a company teetering on the brink that had lied in securities filings.

In addition, Verizon's prior argument  -- that it was forced to make sweeping attacks on Covad because it was impossible to identify particular instances in which Covad did anything wrong -- was apparently false and Verizon now maintains it can identify every one.

1   Complaint in a public effort to chill Covad's First Amendment rights, but then to avoid the

2   scrutiny of law by abandoning its allegations.  SLAPP suits are intended to deplete a defendant's

3   resources and chill the valid exercise of speech and petition rights.  Cal. Code of Civ. Pro.

4   § 425.16(a).  They are brought "to obtain an *economic* advantage over the defendant, not to

5   vindicate a legally cognizable right of the plaintiff."  Wilcox, 27 Cal. App. 4th at  816, 33 Cal.

6   Rptr. 2d at 450; see also Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 645, 49

7   Cal. Rptr. 2d 620 (1996).  As already discussed (see Orig. Anti-SLAPP Motion at 10-11 &

8   Statement of Facts § D, *supra*), this lawsuit has threatened, in fact chilled, Covad's exercise of its

9   First Amendment rights.

> Persons who threaten the exercise of another's constitutional rights to speak freely
> and petition for the redress of grievances should be adjudicated to have done so,
> not permitted to avoid the consequences of their actions by dismissal of the
> SLAPP suit when a defendant challenges it.  An adjudication in favor of the
> defendant on the merits of the defendant's motion to strike provides both financial
> relief in the form of fees and costs, as well as a vindication of society's
> constitutional interests.

15   Moore, 69 Cal. App. 4th at 752, 81 Cal. Rptr. 2d at 812.

16   Verizon's amendments only exacerbate the impact of this SLAPP suit.  By  reversing

17   course, Verizon shifts the target of Covad's defense, further implicating Covad's resources.  In so

18   doing, Verizon already has achieved its improper objectives.  Id.; see Simmons v. Allstate Ins.

19   Co., 92 Cal. App. 4th 1068, 1074, 112 Cal. Rptr. 2d 397, 401 (2001).

20   Moreover, just as fleeing from police may be used as evidence of guilt, abandoning

21   allegations when an anti-SLAPP motion is pending permits an inference that the plaintiff

22   dismissed offending claims or allegations "to try to avoid an award of attorneys' fees and costs

23   under Section 425.16." ecash Technologies, Inc., 127 F. Supp. 2d at 1084.  The court in Coltrain

24   even found that when a voluntary dismissal follows the filing of a motion to strike, there is a

25   "presumption" that the moving party is the "prevailing party."  66 Cal. App. 4th at 107, 77 Cal.

26   Rptr. 2d at 608.  Cf. Moore, 69 Cal. App. 4th at 752 (trial court must adjudicate the merits of

27   defendant's motion to strike before ruling on defendant's request for fees and costs).

28   Finally, there is no express or implied right to be granted leave to amend a SLAPP

1   complaint.  Simmons, 92 Cal. App. 4th at 1073-74, 112 Cal. Rptr. 2d at 400-01.  Allowing a

2   SLAPP claimant to amend the complaint to eliminate the offending verbiage "would completely

3   undermine the statute by providing the pleader a ready escape from section 425.16's quick

4   dismissal remedy."  Id. at 1073, 112 Cal. Rptr. 2d at 401.  Amendment is tantamount to a "second

5   opportunity to disguise the vexatious nature of the suit through more artful pleading."  Id.

6          In dismissing with leave to amend, the Court did not authorize Verizon to eliminate

7   offending allegations and obscure its motivation in filing this action.  Indeed, Simmons prohibits

8   amendments that are designed to avoid a SLAPP dismissal.  See 92 Cal. App. 4th at 1073, 112

9   Cal. Rptr. 2d at 401.  Instead, the Court invited Verizon to explain its allegations and the basis for

10  each claim.  Verizon's attempts to pervert its opportunity to amend should be rejected.

11  **II.     VERIZON CANNOT SATISFY THE STATUTE'S REQUIREMENT THAT IT
           PROVIDE ADMISSIBLE EVIDENCE SHOWING A PROBABILITY OF
12         PREVAILING.**

13         Because Verizon's claims arise from Covad's protected activity, the Court must strike the

14  complaint unless Verizon presents *admissible evidence* sufficient to show a probability of

15  prevailing.[8]  "It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations

16  in an unverified complaint would be sufficient to avoid an order to strike the complaint."  Dupont

17  Merck, 78 Cal. App. 4th at 568, 92 Cal. Rptr. 2d at 760.  Instead, "[o]nce the court determines the

18  first prong of the [anti-SLAPP] statute has been met, a plaintiff must provide the court with

19  sufficient evidence to permit the court to determine whether 'there is a probability that the

20  plaintiff will prevail on the claim.'"  Id. (quoting § 425.16(b)(1)).

21         In Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 103 Cal. Rptr. 2d 174 (2001), as here,

22  plaintiffs attempted to allege a misrepresentation claim against defendants.  In response, one

23  defendant filed a demurrer and an anti-SLAPP motion.  The Court granted both motions,

24  determining that plaintiffs failed to demonstrate a probability of success because their complaint

25

26         [8] See, e.g., Wilcox, 27 Cal. App. 4th at 823-24, 33 Cal. Rptr. 2d at 454-55 (standard is
    akin to that for a nonsuit); id. at 830, 33 Cal. Rptr. 2d at 459 (evidence upon which plaintiff relies
27  must be admissible); Beilenson v. Superior Court, 44 Cal. App. 4th 944, 52 Cal. Rptr. 2d 357,
    362-63 (1996) (granting motion to strike because plaintiff had failed to establish elements of
28  claim by admissible evidence); Evans v. Unkow, 38 Cal. App. 4th 1490, 1496, 45 Cal. Rptr. 2d
    624, 628 (1995) (averments on information and belief insufficient to sustain burden).

1  lacked factual specificity.  The Court explained that the particularity requirement necessitates

2  pleading facts which show "how, when, where, to whom and by what means the representations

3  were tendered."  Id. at 1421-22, 103 Cal. Rptr 2d at 191.  See also Lazar v. Superior Court, 12

4  Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 385 (1996) ("[In a] fraud claim against a corporate

5  employer, plaintiff must allege names of persons who made allegedly fraudulent representations,

6  their authority to speak, to whom they spoke, what they said or wrote, and what was said or

7  written.").

8         Similarly, here, the Court found that Verizon failed to plead the required fraud elements.

9  The Court recognized that "the complaint appears to be based in part upon communications

10 between Covad and Verizon [the trouble tickets], [but] the complaint also appears to be based in

11 part upon communications between Covad and regulatory bodies and/or the public."  Order at 5.

12 The Court found that Verizon gave "no details" regarding the so-called fraudulent trouble tickets,

13 and that Verizon "has not alleged specific facts" about the "numerous allegations regarding

14 alleged fraudulent statements made by Covad to the press and others."  Order at 3-4.  The Court

15 held that Verizon's Original Complaint did not sufficiently allege any claim.  Id. at 4.  Thus,

16 Verizon certainly failed to show a probability of succeeding.

17        But here, unlike Dowling, Verizon had the opportunity to amend and "to resolve the

18 ambiguities as to the bases for its claims."  Order at 5.  Verizon's second attempt is no better;

19 Verizon offers no further information on the allegations that the Court found "unclear" (Order at

20 4) in the Original Complaint.

21        As Covad explains in its Motion to Dismiss, filed today, Verizon still has not stated a

22 fraud claim.  Verizon's Original Complaint alleged that Covad submitted "more than 22,000 false

23 trouble tickets in the year 2000 alone," without identifying a single false trouble ticket among the

24 "tens of thousands" Covad issued between 1997 and 2001 or alleging facts to show why each

25 trouble ticket was false.  Verizon now attaches to its complaint five exhibits (A through E)

26 purporting to identify over 23,000 trouble tickets in the years 1999, 2000 and 2001 that Covad

27 submitted but were returned as "No Trouble Found," "No Access" or "Facilities Change."

28 According to Verizon, "[e]ach of the trouble tickets listed in the exhibits is a specific instance

1   where Covad falsely represented there was a problem on a line caused by Verizon."  Am. Compl.

2   ¶ 1.

3       Exhibits A through E do not provide any evidence to support the alleged fraud any more

4   than the 26 anonymous declarations on which Verizon relied in its failed attempt to buttress the

5   Original Complaint.  The exhibits do not provide Covad any way of knowing by whom or to

6   whom any of the alleged misstatements were made, their specific content or why any

7   representation was false.  See Order at 4 ("To the extent the fraud claims are based upon these

8   [trouble] tickets, Verizon fails to state a claim because no details are given regarding the tickets in

9   question (e.g., when they were submitted, the circumstances of their submission, to whom they

10  were submitted, in what respects they were false).

11      **Missing Data.**  As pointed out in the attached declaration of Wayne White, the vast

12  majority of entries in Verizon's exhibits are "DPU" or "DNA," meaning that the data was

13  unavailable.  See White Decl. ¶ 6.  And the data mostly was not available on data points

14  necessary for Covad to *begin* to address Verizon's claims.

15      The Activity Log is the first crucial piece of information.  As Wayne White explains:

16      It is the actual comments of the technicians on those calls and what they
        found.  Looking just at Exhibit B, for example, of approximately 5600
17      entries (over 97 pages of tables), there is no information provided in the
        Activity Log until page 69.  The bottom line is that greater than 4000 of the
18      trouble tickets (over 70% of them) have no information whatsoever as to
        the resolution or the happenings on those service calls – absolutely none.
19      Without this information all that the data is saying is that Verizon has
        placed the trouble ticket into a category – there is no reason why it has
20      done so.

21  White Decl. ¶ 7.

22      The Trouble Ticket Number is the second crucial piece of information.  Verizon has sued

23  Covad claiming that particular trouble tickets were "false," but does not identify all or even most

24  of the trouble tickets for which Verizon is suing.  Wayne White explains why not knowing the

25  trouble ticket number makes analysis of the data difficult:

26      Using Exhibit B again as an example, Verizon does not list every trouble
        ticket for each order until page 91 of the 97-page exhibit.  In other words,
27      there are only 8 complete pages with this information (approximately 400
        to 450 sequential orders).  On most of the pages in Exhibit B this field is 50
28      to 100% blank.  That by itself makes it impossible for Covad to address

1
2
3

> Verizon's charges.  Without knowing which particular trouble tickets
> Verizon is claiming are false, Covad cannot begin any meaningful data
> reconciliation. Covad has been pointed to thousands of events and being
> told generally that what it has said was false with no way of locating them.

White Decl. ¶ 8.

**Contradictory Data.**  In its Statement of Facts, Section D, Covad has explained how many entries in Verizon's Exhibits A through E actually contradict Verizon's claims.  To further illustrate this point, Exhibit B includes activity logs showing Verizon technicians doing work and changing the loop to resolve a problem, or re-wiring the loop per specifications to solve a problem.  If the technician changed the loop, that suggests something was wrong with the loop, not fraud.  Other entries only state that a technician is going to go out – not that anything had been done – or mention that the Verizon technician cannot find a spare loop to give Covad and Covad was required to open an additional trouble ticket to resolve it.  See White Decl. ¶¶ 12-14.  None of these circumstances suggests that the trouble tickets were false in the first place, let alone fraudulent.

**Undifferentiated Data.**  The final problem with Verizon's exhibits is that there is nothing apparently to distinguish the trouble tickets purportedly identified in one exhibit from any of the others.  As Wayne White observes: "Although the Amended Complaint itself talks about changes in Covad behavior submitting trouble tickets, there are no readily noticeable changes between exhibits."  White Decl. ¶ 11.  For example, Verizon alleges that Covad "negligently opened" false trouble tickets from October 1999 until March 2000, see Am. Compl. ¶¶ 2, 41-48.  But Exhibit A, which purports to track those allegations, includes trouble tickets opened through February *2001*.  See Ex. A.  In addition, according to the text of the Amended Complaint, Covad hatched the alleged scheme of *intentionally* issuing false trouble tickets beginning with the so-called "March Madness" push in March 2000.  See Am. Compl. ¶¶ 55-63, 71.  But Exhibit B, which purports to track those allegations, includes loops opened beginning in *January* 2000.

**Nonsensical Fraud Scheme.**  Moreover, to accept that what Verizon has filed really is a fraud claim requires accepting a number of conflicting propositions, including that:

- Covad decided to commit a fraud that it knew would be caught.  Verizon alleges that it was obliged to investigate every trouble ticket, and that Covad knew that.  See Am. Compl. ¶ 72.

- Covad decided to commit this fraud even though it knew that Verizon was entitled to charge for investigating the trouble tickets if the problems were not Verizon's fault. Id.

- Covad intentionally submitted "*thousands* of false trouble tickets to Verizon beginning in approximately March 2000 through 2001," each of which Verizon determined to be false but nevertheless chose not bill Covad for, continuing to allow itself to be defrauded.  Id. ¶ 71.

- Even though the two parties were already a year into bitter antitrust and patent litigation, Covad reasoned that it could rely on Verizon's good will not to seek a fee "because Verizon was not, [as of March 2000], enforcing Covad's obligation to reimburse Verizon for its service calls when no trouble was found."  Id. ¶¶ 71-72.

- Meanwhile, between March and September 2000, Verizon compiled statistics for and drafted a regulatory submission in which it accused Covad and other CLECs of submitting false trouble tickets.  See Ex. A to Oxman Decl. at iv, 12-13.

- Even though Covad read this submission, it did not sense that Verizon was on to its this scheme.  Instead, Covad continued to submit thousands of false trouble tickets. Am. Comp. ¶ 71.

- Even though Verizon wrote this submission, it continued to remain unaware of the scheme it described in the submission (*sic*).  It continued to receive these thousands of false trouble tickets, to rely on them to its detriment, and never attempted to enforce its contract rights.  Id. ¶ 103.

- Instead, sometime in the year 2001, Verizon decided retrospectively that all those false trouble tickets it had been discussing since at least 2000 were really a massive fraud that the California courts should examine while the litigation against Verizon proceeded in the District of Columbia.

What remains is a Complaint Verizon has brought against a vocal critic in the regulatory arena, designed to silence that critic and manipulated in an attempt to have greatest effect on the critic's speech while providing the maximum level of deniability on that point.  The Amended Complaint does not take Verizon out from under the anti-SLAPP statute – it makes it all the more clear why that statute applies.  Verizon's Amended Complaint should be stricken.

### III.   THE ANTI-SLAPP STATUTE ENTITLES COVAD TO ITS ATTORNEYS FEES AND COSTS.

The anti-SLAPP statute requires that the Court award attorneys' fees and costs to the prevailing defendant.  Cal. Civ. Proc. Code § 425.16(c) ("a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs").  Consequently, Covad requests that this Court enter an attorneys' fees and costs award in its favor, in an amount to include all of its costs and fees associated with this litigation, including those costs and fees incurred in the Original anti-SLAPP Motion and this motion.  That amount should be determined

1   after the hearing on this motion.

2   **Conclusion**

3       For these reasons, Covad's renewed special motion to strike the Amended Complaint

4   should be granted pursuant to § 425.16(b) and attorneys' fees and costs should be awarded in

5   accordance with § 425.16(c).

6   Dated: January 22, 2002                                   Respectfully submitted,

7   John R. Gerstein, admitted *pro hac vice*
    Merril Hirsh, admitted *pro hac vice*
8   Gabriela Richeimer, admitted *pro hac vice*            s/Margaret Robbins
    ROSS DIXON & BELL, L.L.P.              Brad Sonnenberg, CA Bar No. 151158
9   2001 K Street, N.W.                        Margaret Robbins, CA Bar No. 193746
    Washington, D.C. 20006                Lisa Crowley, CA Bar No. 175946
10  (202) 662-2000 (phone)                Covad Communications Company
    (202) 662-2190(facsimile)            3420 Central Expressway
11                                        Santa Clara, California  95054
    James W. Stubblefield, CA Bar No. 164284   Telephone:  (408) 987-1113
12  ROSS, DIXON & BELL, L.L.P.          Facsimile:  (408) 987-1111
    550 West "B" Street, Suite 400
13  San Diego, CA 92101
    (619) 235-4040 (phone)
14  (619) 231-8796(facsimile)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COVAD COMMUNICATIONS COMPANY
BRAD SONNENBERG (SBN 151158)
MARGARET A. ROBBINS (SBN 193746)
LISA R. CROWLEY (SBN 175946)
3420 Central Expressway
Santa Clara, California  95054
Telephone:  (408) 844-7500
Facsimile:  (408) 616-6604

ROSS, DIXON & BELL, L.L.P.
John R. Gerstein (admitted *pro hac vice*)
Merril Hirsh (admitted *pro hac vice*)
Gabriela Richeimer (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006-1040
Telephone:  (202) 662-2000
Facsimile:  (202) 662-2190

ROSS, DIXON & BELL, L.L.P.
James W. Stubblefield (SBN 164284)
550 West B Street, Suite 400
San Diego, CA 92101-3538
Telephone:  (619) 235-4040
Facsimile:  (619) 231-8796

Attorneys for Defendants
COVAD COMMUNICATIONS COMPANY and
DIECA COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| **VERIZON DELAWARE, INC, VERIZON MARYLAND INC., VERIZON NEW JERSEY INC., VERIZON NEW YORK INC., VERIZON PENNSYLVANIA INC., and VERIZON WASHINGTON, D.C. INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COVAD COMMUNICATIONS COMPANY and DIECA COMMUNICATIONS, INC.,**<br><br>**Defendants.** | No. C01-20524<br><br><u>PROOF OF SERVICE</u> |

I am over 18 years of age, not a party to this action and employed in the District of

Columbia 2001 K Street, N.W., Washington, D.C. 20006.  I am readily familiar with the practice

of this office for collection and processing of correspondence for mailing with the United States

PROOF OF SERVICE – C 01-20524 (JF)

1   Postal Service and correspondence is deposited with the United States Postal Service that same

2   day in the ordinary course of business.

3       Today I served the attached:

4       **COVAD'S SPECIAL MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16**

5       by causing a true and correct copy of the above to be placed in the United States Mail at

6   Washington, D.C. in sealed envelope(s) with postage prepaid, addressed as follows:

7
                        Mark C. Hansen
                        Neil M. Gorsuch
8                       Michael J. Guzman
                        Eli C. Schulman
9                       John H. Longwell
                Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C.
10                      Sumner Square
                        1615 M Street, N.W.
11                      Suite 400
                   Washington, D.C. 20036-3209
12
                        Daniel H. Bookin
13                 O'Melveny & Myers, L.L.P.
                   Embarcadero Center West
14                      275 Battery Street
                San Francisco, California 94111-3305
15
                        Charles P. Molster
16                      Winston & Strawn
                        1400 L Street, N.W.
17                         10th Floor
                   Washington, D.C. 20005
18
                          John Thorne
19                         Ajit V. Pai
                            Verizon
20                 1320 North Courthouse Road
                   Arlington, Virginia 22201
21

22       I declare under penalty of perjury under the laws of the District of Columbia that the

23   foregoing is true and correct and that the foregoing is true and correct and that I am employed in

24   the office of a member of the bar of this court at whose direction the service was made and that

25   this declaration was executed on January 22, 2002.

26                          _____s/Gabriela Richeimer_____

27                               Gabriela Richeimer

28

1   COVAD COMMUNICATIONS COMPANY
    BRAD SONNENBERG (SBN 151158)
2   MARGARET A. ROBBINS (SBN 193746)
    LISA R. CROWLEY (SBN 175946)
3   3420 Central Expressway
    Santa Clara, California  95054
4   Telephone:  (408) 844-7500
    Facsimile:  (408) 616-6604
5
    ROSS, DIXON & BELL, L.L.P.
6   John R. Gerstein (admitted *pro hac vice*)
    Merril Hirsh (admitted *pro hac vice*)
7   Gabriela Richeimer (admitted *pro hac vice*)
    2001 K Street, N.W.
8   Washington, D.C. 20006-1040
    Telephone:  (202) 662-2000
9   Facsimile:  (202) 662-2190

10  ROSS, DIXON & BELL, L.L.P.
    James W. Stubblefield (SBN 164284)
11  550 West B Street, Suite 400
    San Diego, CA 92101-3538
12  Telephone:  (619) 235-4040
    Facsimile:  (619) 231-8796
13
    Attorneys for Defendants
14  COVAD COMMUNICATIONS COMPANY and
    DIECA COMMUNICATIONS, INC.
15
                     UNITED STATES DISTRICT COURT
16                  NORTHERN DISTRICT OF CALIFORNIA
                           SAN JOSE DIVISION
17

18  **VERIZON DELAWARE, INC, VERIZON**          No. C01-20524
    **MARYLAND INC., VERIZON NEW**
19  **JERSEY INC., VERIZON NEW YORK INC.,**      [PROPOSED] ORDER GRANTING
    **VERIZON PENNSYLVANIA INC., and**           COVAD'S SPECIAL MOTION TO
20  **VERIZON WASHINGTON, D.C. INC.,**           STRIKE

21          **Plaintiffs,**

22          **v.**

23  **COVAD COMMUNICATIONS COMPANY**
    **and DIECA COMMUNICATIONS, INC.,**
24
            **Defendants.**
25

26          The Court having considered the application of defendants' Covad Communications and

27  DIECA Communications Inc. (collectively "Covad") to strike the First Amended Complaint

28  pursuant to C.C.P. § 425.16, Verizon's opposition thereto and Covad's reply; now, therefore,

            PROPOSED ORDER GRANTING COVAD'S SPECIAL MOTION TO STRIKE (No. C 01-20524)

1    IT IS HEREBY ORDERED that Covad's Motion is GRANTED,

2    IT IS FURTHER ORDERED that Verizon's First Amended Complaint is DISMISSED

3 with prejudice, and

4    IT IS FURTHER ORDERED that Covad is awarded its fees and costs associated with

5 defending this action.

6    IT IS SO ORDERED.

7    DATED: _____, 2002

8                            By:    _____

9                                   The Honorable Judge Jeremy Fogel
                                    Northern District of California

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28